IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Robin Repasky, ) | |
| ) | Civil Action No. 2:12-3331-RMG-BHH |
| Plaintiff, ) | |
| ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| ) | |
| vs. ) | |
| ) | |
| Pfizer Inc., Tom Malick, Eric ) | |
| Digieso, David Wagner ) | |
|  and Kathy Spencer-Pike, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the Court on the Defendants Tom Malick, David Wagner, and Kathy Spencer-Pike's motion to dismiss [Doc. 5] and Eric Digieso's separate motion to dismiss and to strike [Doc. 12], pursuant to Federal Rules of Civil Procedure 12. In her Complaint, the plaintiff alleges various federal and state claims. Defendant Digieso has moved for dismissal of the plaintiff's claim for intentional infliction of emotional distress, the only cause pled against him. (See Compl. ¶¶ 32-35, 74-79.) Defendants Malick, Wagner, and Spencer-Pike have also moved for dismissal of the intentional infliction of emotional distress claim. (See Compl. ¶¶ 74-79.) Defendant Malick and Spencer-Pike have additionally moved for dismissal of the plaintiff's claim for negligent supervision and retention, the only other claim pending against Spencer-Pike. (See Compl. ¶¶ 70-73.) Malick, however, has not moved for dismissal of the defamation claim against him, which remains pending. (See Compl. ¶¶ 86-91.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment cases are referred to a United States Magistrate Judge for consideration.

## **FACTUAL BACKGROUND**

The plaintiff was an employee of Defendant Pfizer from, on or about, 1997 through July 1, 2011, when she resigned her employment. (Compl. at ¶ 11, 46.)

Relevant to this motion, the plaintiff contends that Defendant Eric Digieso intentionally told a "violent and brutal story in front of plaintiff and her colleagues about killing a dog" for the purpose of psyching the plaintiff out prior to a seminar in which she participated. (Compl. at ¶¶ 33-34.) She further alleges that Defendant Digieso knew that the plaintiff was "an animal lover" and that this incident was "particularly harsh due to Plaintiff's gender." (Compl. at ¶¶ 32, 35.)

The plaintiff also contends that Malick, Wagner, and Spencer-Pike either publically criticized her or failed to stop such public and humiliating criticism.

## **APPLICABLE LAW**

Rule 12(c) of the Federal Rules of Civil Procedure allows a party to move for judgment on the pleadings after the pleadings are closed. Fed. R. Civ. P. 12(c). Such a motion should be granted when, accepting the facts set forth in the pleadings, the case can be decided as a matter of law. *Tollison v. B & J Machinery Co., Inc.*, 812 F. Supp. 618, 619 (D.S.C.1993). The standard is almost identical to the standard employed in considering a Rule 12(b)(6) motion "with the key difference being that on a 12(c) motion, the court is to consider the answer as well as the complaint." *Cont'l Cleaning Serv. v. United Parcel Serv., Inc.*, 1999 WL 1939249, at *1 (M.D.N.C.1999); *see also Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir.2002). In addition to the complaint, the factual allegations of the answer are taken as true, to the extent "they have not been denied or do not conflict with the complaint." *Pledger v. North Carolina Dep't of Health & Human Servs.*, 7 F. Supp.2d 705, 707 (E.D.N.C.1998).

Instructively, under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief. In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)(citations omitted).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must state "a plausible claim for relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Stated differently, "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)).

## DISCUSSION

### I.     Intentional Infliction of Emotional Distress

The defendants first contend that the plaintiff's claim for intentional infliction of emotional distress as to each of them is barred by the exclusivity provision of the South Carolina Workers' Compensation Act ("Act"). S.C. Code. Ann. § 42-1-540. That statute states:

> The rights and remedies granted by this Title to an employee when he and his employer have accepted the provisions of this Title, respectively, to pay and accept compensation on account of personal injury or death by accident, shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents or next of kin as against his employer, at common law or otherwise, on account of such injury, loss of service or death.

3

*Id.* Additionally, "Every employer and employee . . . shall be presumed to have accepted the provisions of [the Act] respectively to pay and accept compensation for personal injury . . . arising out of and in the course of the employment and shall be bound thereby." S.C. Code § 42-1-310.

The plaintiff concedes that a claim for intentional infliction of emotional distress falls within the ambit of the Act, such that it is the exclusive remedy as against her *employer*. *See Loges v. Mack Trucks, Inc.*, 417 S.E.2d 538 (S.C.1992) ("[A]llegations of intentional infliction of emotional distress, assault and battery as these constitute personal injuries within the scope of the Act.") (*citing Powell v. Vulcan Materials Co.*, 384 S.E.2d 725 (S.C. 1989); *Thompson v. J.A. Jones Const. Co.*, 19 S.E.2d 226 (S.C. 1942); see also *Dickert v. Metropolitan Life Ins. Co.*, 428 S.E.2d 700, 701 (S.C. 1993) . The plaintiff argues, however, that she means to sue the individual defendants in their individual capacities for an intentional tort and, thus, the Act should not apply as any bar to a claim against them.

The Court has previously been hesitant to adopt this view and has, specifically, rejected it on at least one occasion, as the parties note. *See Myra Crutchfield v. Pfizer et al.*, Docket Number 2:12-01462-RMG-BHH. The Court would plagiarize itself briefly.

Foundationally, the Act is intended to preclude an employee from maintaining a tort action against an employer where the employee sustains a work-related injury. *Edens v. Bellini*, 359 S.C. 433, 597 S.E.2d 863, 868 (S.C. Ct. App. 2004); *Tatum v. Med. Univ. of S.C.*, 346 S.C. 194, 552 S.E.2d 18 (2001). In so many cases, the work-related injury will necessarily involve the conduct of co-workers and other employees; that is how a business entity acts – through its employees. *See Palmer v. House of Blues Myrtle Beach Rest. Corp.*, 2006 WL 2708278 (D.S.C. Sept. 20, 2006) (dismissing negligent supervision cause of action because barred by the exclusivity provision of the South Carolina Workers' Compensation Act); *Dickert v. Metropolitan Life Ins. Co.*, 428 S.E.2d 700 (S.C. 1993) (stating that the Act provides exclusive remedy for employees who sustain work-related

injury; claim of negligence for failure to exercise reasonable care in selection, retention, and supervision of co-employee is covered by the Act); *Loges*, 417 S.E.2d 538 (involving intentional infliction of emotional distress and assault and battery); *see also Todd v. Federal Express Corp.*, 2010 WL 1294070, at *1 (D.S.C. March 29, 2010) (involving assault and battery).

Accordingly, South Carolina has expressly acknowledged, at least twice, that the immunity under the Act "is conferred not only on the direct employer **but also on co-employees**." *Posey v. Proper Mold & Engineering, Inc.,* 661 S.E.2d 395, 403 (S.C. Ct. App. 2008) (emphasis added); *Edens v. Bellini*, 359 S.C. 433, 597 S.E.2d 863, 868 (S.C. Ct. App. 2004). Were it any other way, the "exclusivity" provision would be made a kind of sham, for a plaintiff's ability to so routinely elect between remedies. But, instead, "the exclusive remedy doctrine was enacted to balance the relative ease with which the employee can recover under the Act: the employee gets swift, sure compensation, and the employer receives immunity from tort actions by the employee." *Edens*, 597 S.E.2d at 868.

Where immunity is co-equal between employer and employee for *negligence* based claims, apparently, for intentional conduct, South Carolina has stopped short. Indeed, the South Carolina Supreme Court has expressly held that it would be anathema to public policy for co-workers to be absolutely immune from *intentional* and deliberate tortious conduct. *See Dickert*, 428 S.E.2d at 702. "It is against public policy to extend this immunity to the co-employee who commits an intentional tortious act upon another employee." *Id.*[1]

---

[1] Respectfully, the Court is not persuaded by the defendants' view that this portion of *Dickert* is anomalous *dicta*. The Court itself has struggled with the meaning and application of *Dickert*, here, and elsewhere. But, it seems plain, at this point, notwithstanding other decisions of this District, that *Dickert*'s alter ego analysis, emphasized by the defendants, is relevant only with respect to employer liability. In other words, if an employee is considered the alter ego of the employer, then the employer, at that moment, loses the protection and limits of liability contemplated by the Act and is fully exposed to whatever damages are available under all relevant causes of action pursuant to statute and at common law. The alter ego analysis is only concerned with the scope of the *employer*'s liability. Is the employee functionally equivalent to the company such that the company is viewed as the intentional tortfeasor and, therefore, disqualified from the Act's limits of liability? *Dickert*'s additional and clarifying *dicta* that intentionally tortious individuals, however, still remain

But, as the Court has been inclined, interpretation of the Act is made liberally, with coverage – and by extension exclusivity – preferredly in mind. *See Peay v. U.S. Silica Co.*, 437 S.E.2d 64, 65 (S.C. 1993). And, so "intentional" conduct has been defined as strictly as possible to include only injuries inflicted with "deliberate or specific intent," rather than those acts taken with mere indifference to substantially certain consequences but not causing some injury, expressly desired. *Id.* In other words, to escape the exclusivity demands of the Act, a plaintiff must aver intentional conduct that amounts to something more than a reckless awareness of potential injury to the plaintiff.

Somewhat distinguishable from other Complaints previously confronting this Court, including in *Crutchfield*, the plaintiff, in this case, has carefully pled allegations of the right kind, at least as to Defendant Digieso. She first contends that Defendant Digieso "intentionally told a violent and brutal story" knowing that the plaintiff was an animal lover." (Compl. ¶¶ 32, 33.) Had her accusations ended there, the claim would likely have failed for alleging intentionality of only the indifferent variety. But, the plaintiff more precisely averred that "Defendant Digieso deliberately told the story to 'psyche out' Plaintiff and to adversely affect her performance at the selling skills seminar." *Id.* ¶ 34. Said again, the plaintiff complains that the defendant allegedly acted with the kind of specific and purposeful desire to injure that is not insulated by the Act.

---

personally liable is, not only complimentary to the principle holding of *Dickert*, but right. Employment in this state cannot possibly be a shield or immunity against intentionally tortious conduct. One is not imbued with the liberty to purposefully injure as an incident of employment. If an employee maliciously stabs or strikes or, fortune forbid, murders a co-worker during office hours, the exclusivity provision of the Act is no free pass. A civil lawsuit lies. Otherwise, all of our crime would be committed there. The unpublished Fourth Circuit decision, in *Bryant v. INA Bearing Co., Inc.*, 1993 WL 540274 (4th Cir. December 22, 1993), cited by the defendants, does not say differently. Likewise, the South Carolina decision in *McClain v. Pactiv Corp.*, 602 S.E.2d 87 (S.C. 2004), again, appears to only deal with whether certain employees were dominant corporate owners or officers such that the exclusivity provision barred a claim against the *employer* (Pactiv). *Id.* at 89 ("The court agreed with Pactiv that the intentional infliction of emotional distress claim was barred by the exclusivity provision of the Workers' Compensation Act.")

6

The Court believes this is enough. Defendant Digieso has not made any other argument as to the sufficiency of the pleading concerning him.

Defendants Malick, Wagner, and Spencer-Pike appear differently situated for purposes of this claim and analysis, however. To summarize, the plaintiff alleges that Wagner "criticized and insulted Plaintiff, publicly humiliating Plaintiff and reducing her to tears." (Compl. ¶ 30.) Spencer-Pike is alleged to have not prevented or stopped this "unwarranted attack." *Id.* Malick is alleged to have told other Pfizer employees that the plaintiff had no "class" and was "unprofessional." *Id.* ¶ 48.

There are no allegations that these defendants deliberately treated plaintiff in these ways for the express purpose of causing her emotional distress, as South Carolina requires. *See Peay*, 437 S.E.2d at 65. That their conduct might have ultimately caused distress or even that they might have been indifferent to the substantial likelihood that their conduct might cause distress is not legally sufficient. *See id.*

Accordingly, Malick, Wagner, and Spencer-Pike are not alleged to have participated in conduct with "the deliberate or specific intent to injure" such that the claim against them may reasonably be considered to have escaped the effect of the Act's exclusivity provision, as intentional torts. *Id.* The undersigned would recommend dismissal of it, as against Malick, Wagner, and Spencer-Pike.

## II.    Negligent Supervision and Retention

Defendants Malick and Spencer-Pike also contend that the plaintiff's claim for negligent supervision and retention is barred by the exclusivity provision of the Act. The plaintiff agrees that such a claim is barred and consents to its dismissal.

7

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is RECOMMENDED that Defendant Eric Digieso's motion to dismiss and to strike [Doc. 12] should be DENIED. It is further recommended that Defendants Tom Malick, David Wagner, and Kathy Spencer-Pike's motion to dismiss [Doc. 5] be GRANTED. If so adopted, Defendants Wagner and Spencer-Pike should be dismissed from the case.

s/Bruce H. Hendricks<br>United States Magistrate Judge

July 10, 2013
Charleston, South Carolina