IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Robin Repasky,  )<br>  )<br>  Plaintiff,  )<br>  )<br>  )<br>  )<br>  )<br>vs.  )<br>  )<br>Pfizer Inc., Tom Malick, Eric  )<br>Digieso, David Wagner  )<br> and Kathy Spencer-Pike,  )<br>  )<br>  Defendants.  )<br>_____ ) | Civil Action No. 2:12-3331-RMG-BHH<br><br>**REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

This matter is before the Court on Defendant Pfizer, Inc.'s motion to dismiss and to strike [Doc. 16], pursuant to Federal Rules of Civil Procedure 12. In her Complaint, the plaintiff alleges various federal and state claims. Defendant Pfizer has moved for dismissal of the plaintiff's claims for constructive discharge/hostile work environment, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.*, and breach of contract. The defendant also contends that various allegations of the Complaint concern events that are legally time barred under applicable law.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment cases are referred to a United States Magistrate Judge for consideration.

**FACTUAL BACKGROUND**

The plaintiff was an employee of Defendant Pfizer from, on or about, 1997 through July 1, 2011, when she resigned her employment. (Compl. at ¶ 11, 46.) She alleges, in various ways, that she was harassed on account of her gender and age to the point of

mental suffering and ultimately a constructive discharge. Her allegations will be addressed in more detail below.

## APPLICABLE LAW

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief. In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)(citations omitted).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must state "a plausible claim for relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Stated differently, "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. (quoting Fed. R. Civ. P. 8(a)).

Federal Rule of Civil Procedure 12(f) provides that the Court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

## DISCUSSION

I.   **Time Barred Allegations**

The defendant first contends that most, if not all, of the plaintiff's sex and age discrimination allegations are time barred for not having occurred within 300 days of the filing of her administrative Charge with the Equal Employment Opportunity Commission ("EEOC").

It is true that before filing suit under Title VII or the ADEA, a plaintiff must first exhaust her administrative remedies by bringing a timely charge of discrimination with the EEOC. *See* 42 U.S.C. § 2000e-5(e) (Title VII); 29 U.S.C. § 626(d)(1) (ADEA); 42 U.S.C. § 12117(a) (ADA)*; Gilliam v. S.C. Dep't of Juvenile Justice*, 474 F.3d 134, 139 (4th Cir. 2007) (Title VII); *Smith v. First Union Nat. Bank*, 202 F.3d 234, 247 (4th Cir. 2000) (Title VII); *Davis v. Virginia Commonwealth Univ.*, 180 F.3d 626, 628 n. 3 (4th Cir.1999) (ADA); *Fisher v. Securitas Sec. Serv. USA Inc.*, 2010 WL 568234, at *3 (D.S.C. Feb. 12, 2010) (Title VII and ADEA claims); *Strickland v. Baker*, 2010 WL 146816, at **3-4 (D.S.C. Jan. 11, 2010) (Title VII and ADA claims). Title VII and the ADEA establish two possible limitation periods for filing a discrimination charge with the EEOC. *See* 42 U.S.C. § 2000e-5(e)(1) (Title VII); 29 U.S.C. § 626(d)(1) (ADEA). The standard limitations period for filing a charge is 180 days after the alleged unlawful employment practice. *Id*. The limitations period is extended to 300 days, however, when state law proscribes the alleged employment practice and the charge has initially been filed with a state or local deferral agency. *See* 42 U.S.C. §2000e-5(e)(1); 29 U.S.C. § 626(d)(1)(B).

However, "when the relevant state agency has entered into a work sharing agreement with the EEOC and that agreement states that each agency will serve as the agent of the other for the purpose of receiving charges, it is well-settled law that a charge filed with the EEOC is 'constructively filed' with the state agency either on the same day that

3

the charge was filed with the EEOC or on the day that the EEOC refers the complaint to the state agency." *Peterson v. State of Cal. Dept. of Corrections and Rehabilitation*, 319 Fed. Appx. 679, 680 (9th Cir. 2009) *(*quoting *EEOC v. Commercial Office Products Co.*, 486 U.S. 107, 112-113, 125 (1988) (holding that the 300-day federal limitations period applied to a claim that the plaintiff filed only with the EEOC 290 days after the discriminatory act, and stating that "[t]he EEOC's referral of a charge initially filed with the EEOC to the appropriate state or local agency properly institutes the agency's proceedings within the meaning of the Act"); *Puryear v. County of Roanoke*, 214 F.3d 514, 519 (4th Cir. 2000)*.*

This District has traditionally assumed, without requiring proof, the existence of such a workshare agreement between South Carolina and the EEOC. *See Brown v. Berkeley County School Dist.*, 339 F.Supp.2d 715, 721 n.3 (D.S.C.2004); *Grooms v. Mobay Chem. Corp.*, 861 F. Supp. 497, 503 & n. 7 (D.S.C.1991). Accordingly, the 300-day limitations period was implicated by virtue of any EEOC filing, pursuant to the operative worksharing agreement.

And, as the defendant contends, a plaintiff's failure to file a charge within the applicable limitations period bars a later lawsuit in federal court. *See McCullough v. Branch Banking & Trust Co.*, 35 F.3d 127, 131 (4th Cir. 1994) ("When the plaintiff fails to file such a complaint in a timely fashion with the EEOC, the claim is time-barred in federal court.") The plaintiff filed her EEOC Charge on February 1, 2012 (at the earliest). (Def. Ex. A.) Accordingly, the defendant argues that she is not entitled to rely on allegations in support of her federal claims regarding conduct or events prior to April 1, 2011 (300 days prior to the filing of her EEOC Charge). Specifically, the defendant identifies Paragraphs 14-23, 25-38, 41, 44, 45, and 53-55 as allegations that fall outside the 300-day window.

The plaintiff responds, however, that all such conduct constitutes a "continuing violation," which may, in fact, be properly considered. The "continuing violation doctrine" constitutes an exception to the 300-day limitations period. Under the doctrine, a claim "may

4

appropriately extend . . . to acts that occurred before the relevant limitations period [if] the hostile work environment continued within the limitations period as well." *White v. BFI Waste Servs.*, LLC, 375 F.3d 288, 293 (4th Cir. 2004). The United States Supreme Court has limited the applicability of the doctrine to hostile work environment claims, which are based upon the cumulative affect of individual acts that may not themselves be actionable. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002); *Gilliam v. South Carolina Dept. Of Juvenile Justice*, 474 F.3d 134, 140-41 (4th Cir. 2007). The plaintiff has pled Title VII and ADEA hostile work environment claims (Compl. ¶¶ 53-56, 65). Even still, the defendant resists.

Specifically, the defendant argues that the continuing violation doctrine does not permit consideration of *discrete* acts of discrimination occurring outside the relevant period and that the plaintiff has only pled such incidents. Indeed, the Fourth Circuit has concluded that a plaintiff cannot benefit from the continuing violations theory where discrete violations are alleged. *See Holland v. Washington Homes, Inc.*, 487 F.3d 208, 220 (4th Cir.2007). Instead, "an employee must file a charge of discrimination within the appropriate limitations period as to each discrete act of discrimination that occurred." *Williams v. Giant Food Inc.*, 370 F.3d 423, 429 (4th Cir.2004). Importantly, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Morgan*, 536 U.S. at 113.

The question, therefore, is whether the untimely acts in the plaintiff's Complaint are discrete such that they could, and should, have been previously brought or whether they are part of an ongoing pattern of harassing conduct, which, independently, would have been inactionable. The Complaint is a mixed bag. There is a kind of promotion or involuntary transfer allegation, dating to January 30, 2009. (Compl. ¶¶ 15-18.) "[F]ailure to promote is a discrete act of discrimination." *Williams v. Giant Food Inc.*, 370 F.3d 423, 429 (4th Cir.2004). Of course, here, the allegations are not a refusal to promote but rather

5

a kind of allegedly harassing and imposing transfer. She does, however, couch the allegations in disparate treatment terms, drawing comparison to male and younger individuals who were treated differently. *Id*. ¶¶ 17-18. She also alleges that she was given a lesser ranking and bonus than a male co-worker, a potentially distinct and discrete adverse employment action. *Id*. ¶ 22.

But, otherwise, the many allegations relate to generally harassing conduct, which likely would not have been actionable independently: gender-specific insulting and humiliating remarks, *id*. ¶ 21; routine hostility towards women, *id*. ¶ 24; refusal of travel accommodation requests, *id*. ¶ 25-27; and mistreatment and public humiliation at a selling seminar, *id*. ¶ ¶ 29-30, 33-34. The undersigned does not believe that these are discrete incidents of discrimination beyond the reach of any theory in continuing violation. Instead, they are a potentially actionable pattern of harassing conduct only when taken together. The plaintiff, therefore, should be permitted the opportunity to daisy-chain their effect across the 300-day rubicon to more timely events.

The Court, obviously, does not know whether the combination of any such allegations will ever ultimately be established or established to an extent that implies severity and pervasiveness. But, on their face, they imply a plausible claim for relief on a set of hostile work environment claims.

## II. Constructive Discharge

The defendant further argues that the plaintiff's constructive discharge "claim" should be dismissed. Of course, the plaintiff has not pled a constructive discharge claim and the Court is generally dubious that such claims exist.[1] She has pled hostile work environment

---

[1] It is the undersigned's view and experience that the constructive discharge concept is the legal fiction by which wrongful termination claims are salvaged where no actual termination or other adverse employment action has, in fact, occurred. In other words, constructive discharge is an element of a structurally larger claim, to wit, Title VII, Section 1983, the South Carolina Whistleblower Act, as opposed to some legal end unto itself. Case law would seem to bear this out. *See, e.g., Honor v. Booz–Allen & Hamilton, Inc.*, 383 F.3d 180, 186 (4th Cir.2004) (discussing constructive discharge in the context of wrongful termination, Title VII, and Section 1981 claims);

claims. So, the specific viability of a constructive discharge claim is not at issue. The defendant, of course, is in truth contending that the legal circumstances necessary to establish such an event for purposes of any Title VII or ADEA claim are not pled. The Court respectfully disagrees.

In the Fourth Circuit, an employee is constructively discharged "if an employer deliberately makes the working conditions of the employee intolerable in an effort to induce the employee to quit." *Whitten v. Fred's, Inc.*, 601 F.3d 231, 248 (4th Cir. 2010) (quoting *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1353-54 (4th Cir.1995)) *abrogated on other grounds by Vance v. Ball State University*, 133 S.Ct. 2434 (2013); *see also Pennsylvania State Police v. Suders*, 542 U.S. 129, 134 (2004). A plaintiff must therefore "allege and prove two elements: (1) deliberateness of the employer's actions and (2) intolerability of the working conditions." *Whitten*, 601 F.3d at 248. To prove deliberateness, the plaintiff must prove "that the actions complained of were intended by the employer as an effort to force the employee to quit." *Id*.; *Bristow v. Daily Press, Inc.* 770 F.2d 1251, 1255 (4th Cir. 1985). "To act deliberately, of course, requires intent." *Id*. (quoting *Holsey v. Armour & Co.*, 743 F.2d 199, 209 (4th Cir.1984).) The Fourth Circuit requires proof of the employer's specific intent to force an employee to leave.[2] *Bristow*, 770 F.2d at 1255. Intent may be inferred

---

*Goldsmith v. Mayor & City Council of Baltimore*, 987 F.2d 1064, 1072 (4th Cir.1993) (discussing constructive discharge in the context of a state law claim for intentional interference with contract and prospective advantage).
    Thus, the Court would reject the defendant's argument that constructive discharge is a distinct discriminatory offense that cannot be associated with hostile work allegations. (Pl. Reply at 3.) Indeed, the constructive discharge is their culmination, in many cases. To that end, the constructive discharge would be the adverse action taken within 300 days of the Charge that would legally make relevant the regressively continuing conduct.

[2] The applicability of this high standard persists in this Circuit even till now. *See Whitten*, 601 F.3d at 248-49 & n.8. In *Whitten*, the Fourth Circuit affirmed the test, even while recognizing that it might be on less than solid footing in light of recent United States Supreme Court precedent:

> Our requirement that the plaintiff prove the employer intended to force the plaintiff to quit is arguably in some tension with the Supreme Court's decision in *Pennsylvania State Police v. Suders*, 542 U.S. 129, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004). In *Suders*, the Court described constructive discharge as "a 'worse case'

through circumstantial evidence, including a failure to act in the face of known intolerable conditions. *Id*. Where, however, all employees are treated identically, no particular employee can claim that difficult working conditions signify the employer's intent to force that individual to resign. *Id*. Johnson, 646 F.2d at 1256.

As to the second element of constructive discharge, the intolerability of working conditions is assessed by the objective standard of whether a "reasonable person" in the employee's position would have felt compelled to resign. *Bristow*, 770 F.2d at 1255. "An employee may not be unreasonably sensitive to his working environment." *Id*. (quotation and citation omitted). Thus, the law does not permit an employee's subjective perceptions to govern a claim of constructive discharge. *Id*. "Every job has its frustrations, challenges and disappointments; these inhere in the nature of work. An employee is protected from a calculated effort to pressure him into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by his co-workers." *Id.*

Admittedly, the plaintiff's Complaint is not pled with perfect parallelism to this test. But, allegations of both intent and subjective intolerability are present. The plaintiff contends

---

harassment scenario, harassment ratcheted up to the breaking point," *id*. at 147-48, 124 S. Ct. 2342, and held that a constructive-discharge plaintiff must prove that her working conditions were "so intolerable that a reasonable person would have felt compelled to resign," *id*. at 147, 124 S. Ct. 2342. Because there is no requirement that a plaintiff in a routine hostile-environment case show that the employer intended to force her to quit, it could be that, under *Suders*, deliberateness on the part of the employer would not be required to show the "'worse case' harassment scenario" that is constructive discharge. We have, however, continued to apply the deliberateness requirement to constructive-discharge claims since *Suders* was decided. *See Heiko v. Colombo Savings Bank, F.S.B.*, 434 F.3d 249, 262 (4th Cir.2006) (involving constructive-discharge claim asserted under the Americans With Disabilities Act). We believe that circuit precedent thus prevents us from considering Whitten's assertion that deliberateness is no longer an element of a constructive discharge claim. *See, e.g., Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 272 n.2 (4th Cir.2002) ("[A] panel of this court cannot overrule, explicitly or implicitly, the precedent set by a prior panel of this court. Only the Supreme Court or this court sitting en banc can do that." (internal quotation marks omitted)).

8

that the defendant acted with a specific intent to injure her to the point of an inability to perform. (Compl. ¶¶ 32-34, 38.) And, it is critical to remember that even circumstantial evidence of a refusal to respond to intolerable conditions may be sufficient. The plaintiff has pled some. (Compl. ¶ 37-40.) And, in medical treatment for anxiety, stress, and fatigue, she has alleged that it worked. *Id*. ¶ 28, 41. The intent and subjective elements are present.

As to the objective element of the constructive discharge standard, there is sufficient vagueness in the Complaint regarding some of the details of the alleged hostility that discovery would be necessary before the severity of the total alleged picture can be measured in reasonableness terms. It is enough, for now, that allegations have been made that make an objectively severe hostile environment at least plausible. It is simply too early to compare notes, so to speak, with the severity of other allegations in comparable cases. There is some specified hostile conduct, which if established sounds severe, and there is yet other that is now generalized but which may prove more sinister with the lamp of discovery.

The defendant makes another argument against the plaintiff's ability to use historical evidence of harassment, including that which is outside of the 300-day window, to establish discharge. Namely, the defendant contends that the only time period relevant to a constructive dishcarge claim is the "time of resignation." *See, e.g., Jones v. Greenville Hosp*., 166 F.3d 1209 (4th Cir.1998) (work conditions were not intolerable since the alleged harasser left the workplace two months before plaintiff resigned).

Certainly, the harassing conduct must exist at the time of resignation. But, this logic does not foreclose consideration of all that comes before that moment. Rather, the axiom requires that the hostility persist up to it. Indeed, the hostile work environment can *only* be viewed in light of the contiguous string of harassment, which, in this case, proceeds an allegedly constructive discharge.

9

The plaintiff should be permitted to continue in the prosecution of her hostile work environment claim based on an allegedly adverse employment action in constructive discharge.

## III. Breach of Contract

Lastly, the defendant has moved for dismissal of the plaintiff's claim for breach of contract. South Carolina law provides that "termination of an at-will employee normally does not give rise to a cause of action for breach of contract." *Conner v. City of Forest Acres*, 560 S.E.2d 606, 610 (S.C. 2002); *Williams v. Riedman*, 529 S.E.2d 28, 32 (S.C. Ct. App. 2000). It is undisputed that the plaintiff's employment was at-will. As is typical, however, the plaintiff would argue that the at-will status has been modified through promises, of the defendant, made in its handbook.

Under certain circumstances, it is true, that an at-will employment arrangement can be modified by an oral promise, *see Prescott v. Farmers Tel. Co-op., Inc.*, 516 S.E.2d 923, 926 (S.C. 1999), or by "[m]andatory, progressive discipline procedures . . .," set out in a handbook or policy, for instance. *Hessenthaler v. Tri-County Sister Help, Inc.*, 616 S.E.2d 694, 698 (S.C. 2005).

In her Complaint, the plaintiff has identified only one basis for possible contract. Specifically, the plaintiff contends that, in the defendant's employee handbook, the defendant promised to promote a positive and harassment-free work environment and to refrain from discrimination, harassment, and retaliation. (Compl. ¶ 83.) The plaintiff contends that this promise was breached by the defendant's alleged humiliating and harassing conduct towards the plaintiff. *Id*. ¶ 84.

But, as the defendant emphasizes, generalized harassment and anti-discrimination policies in a handbook do not constitute implied employment contracts, as a matter of law. *See Eady v. Veolia Transp. Servs., Inc.*, 609 F. Supp.2d 540, 560 (D.S.C. 2009) (granting summary judgment for employer on breach of implied contract claim and holding that, "This

Court previously has held that the defendant's nondiscrimination policy 'does not constitute a promise altering the at-will employment relationship and giving rise to a breach-of-contract claim.' . . . The non-discrimination language in the defendant's Handbook will not sustain the plaintiff's cause of action for breach of contract."); *Fyall v. ATC/Ancon of South Carolina, L.P and Nat'l Express Corp.*, 2005 WL 2656962, at *4 (D.S.C. October 18, 2005.). They are too indefinite. *See id.*

The plaintiff, in response, mostly argues concerning whether the disclaimer language in the handbook is sufficient. And, while the plaintiff is right that whether or not a handbook disclaimer is sufficiently conspicuous to disclaim the entire handbook, as a contract, may create issues of fact for a jury, that argument presupposes that the plaintiff has identified some promise within the handbook that, were the handbook itself deemed a contract, could be enforced. As stated, however, generalized anti-discrimination policies have been rejected as enforceable promises, regardless of whether the handbook has otherwise been properly disclaimed, as a whole.

That being said, the employment handbook, as far as the Court can tell, has not been submitted. It is not attached to the Complaint nor is any of it quoted therein. And, the parties on motion do not appear to have attached it as any exhibit, as is sometimes done on motions to dismiss concerning handbook related matters. The Court, therefore, would decline to make any assumptions about the kind of handbook provision to which the plaintiff now refers. It indeed may be written with the kind of adamancy and obligation that might be reasonably viewed as having altered the at-will terms of the employment relationship. The matter is not suitable for resolution at this stage.

Finally, the Court would decline to recommend that any portion of the Complaint be stricken under the applicable standard.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is RECOMMENDED that Defendant Pfizer, Inc.'s motion to dismiss and to strike [Doc. 16] should be DENIED.

                                              s/Bruce H. Hendricks
                                              United States Magistrate Judge

October 25, 2013
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).